## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW HOPKINS,           ) <br>           ) <br>        Plaintiff,     ) <br>           ) <br>     v.          ) <br>           ) <br> NUANCE COMMUNICATIONS, INC.,  ) <br> LLOYD CARNEY, MARK BENJAMIN,  ) <br> DANIEL BRENNAN, THOMAS EBLING,  ) <br> BOB FINOCCHIO, LAURA KAISER,  ) <br> MICHAL KATZ, MARK LARET, and  ) <br> SANJAY VASWANI,        ) <br>           ) <br>        Defendants.   ) | Case No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.  This action stems from a proposed transaction announced on April 12, 2021 (the "Proposed Transaction"), pursuant to which Nuance Communications, Inc. ("Nuance" or the "Company") will be acquired by Microsoft Corporation ("Parent") and Big Sky Merger Sub Inc. ("Merger Sub," and together with Parent, "Microsoft").

2.  On April 11, 2021, Nuance's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Microsoft.  Pursuant to the terms of the Merger Agreement, Nuance's stockholders will receive $56.00 in cash for each share of Nuance common stock they own.

3.      On May 5, 2021, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.   Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Nuance common stock.

9.      Defendant Nuance is a Delaware corporation and a party to the Merger Agreement. Nuance's common stock is traded on the NASDAQ, which is headquartered in New York, New York, under the ticker symbol "NUAN."

10.    Defendant Llyod Carney is Chairman of the Board of the Company.

11.    Defendant Mark Benjamin is Chief Executive Officer and a director of the Company.

12.    Defendant Daniel Brennan is a director of the Company.

13.    Defendant Thomas Ebling is a director of the Company.

14.    Defendant Bob Finocchio is a director of the Company.

15.    Defendant Laura Kaiser is a director of the Company.

16.    Defendant Michal Katz is a director of the Company.

17.    Defendant Mark Laret is a director of the Company.

18.    Defendant Sanjay Vaswani is a director of the Company.

19.    The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

20.    Nuance is a technology pioneer with market leadership in conversational AI and ambient intelligence.

21.    On April 11, 2021, Nuance's Board caused the Company to enter into the Merger Agreement with Microsoft.

22.    Pursuant to the terms of the Merger Agreement, Nuance's stockholders will receive $56.00 in cash for each share of Nuance common stock they own.

23.    According to the press release announcing the Proposed Transaction:

Microsoft Corp (Nasdaq: MSFT) and Nuance Communications, Inc. (Nasdaq: NUAN) today announced they have entered into a definitive agreement under which Microsoft will acquire Nuance for $56.00 per share, implying a 23% premium to the closing price of Nuance on Friday, April 9, in an all-

cash transaction valued at $19.7 billion, inclusive of Nuance's net debt. Nuance is a trusted cloud and AI software leader representing decades of accumulated healthcare and enterprise AI experience. Mark Benjamin will remain CEO of Nuance, reporting to Scott Guthrie, executive vice president of Cloud & AI at Microsoft. The transaction is intended to close this calendar year. . . .

The transaction has been unanimously approved by the Boards of Directors of both Nuance and Microsoft. The deal is intended to close by the end of this calendar year and is subject to approval by Nuance's shareholders, the satisfaction of certain regulatory approvals, and other customary closing conditions.

Upon closing, Microsoft expects Nuance's financials to be reported as part of Microsoft's Intelligent Cloud segment. Microsoft expects the acquisition to be minimally dilutive (less than 1 percent) in fiscal year 2022 and to be accretive in fiscal year 2023 to non-GAAP earnings per share, based on the expected close timeframe. Non-GAAP excludes expected impact of purchase accounting adjustments, as well as integration and transaction-related expenses. The acquisition will not impact the completion of its existing share repurchase authorization. . . .

Goldman Sachs & Co. LLC is acting as exclusive financial advisor to Microsoft, while Simpson Thacher & Bartlett LLP is acting as its legal advisor. Evercore is acting as exclusive financial advisor to Nuance, while Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as its legal advisor.

### *The Proxy Statement Omits Material Information, Rendering It False and Misleading*

24.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

25.     As set forth below, the Proxy Statement omits material information.

26.     First, the Proxy Statement omits material information regarding the Company's financial projections.

27.     With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate adjusted EBITDA and unlevered free cash flow; (ii) projected net income; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

28.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

29.     Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, Evercore Group L.L.C. ("Evercore").

30.     With respect to Evercore's Selected Public Company Trading Analysis, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies observed by Evercore in the analysis; (ii) Evercore's basis for selecting the multiples ranges used in the analysis; (iii) the Company's LFCF and all underlying line items; (iv) the Company's net debt; and (v) the number of fully diluted shares of Nuance common stock.

31.     With respect to Evercore's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the terminal values of the Company; and (iii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis.

32.     With respect to Evercore's Sum-of-the-Parts Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the projected cash flows used in the analysis and all underlying line items; (ii) the terminal values used in the analysis; (iii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; and (iv) Evercore's basis for applying a revenue multiple of 15.0x-20.0x.

33.     With respect to Evercore's Equity Research Analyst Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

34.     With respect to Evercore's Selected HC & ENT Transactions Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; (ii) the individual multiples

and metrics for the transactions; (iii) Nuance's estimated net debt; (iv) Evercore's basis for selecting the multiples range used in the analysis; and (v) the number of fully diluted shares of Nuance common stock.

35.    With respect to Evercore's Selected Vertical Software Transactions Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; (ii) the individual multiples and metrics for the transactions; (iii) Nuance's estimated net debt; (iv) Evercore's basis for selecting the multiples range used in the analysis; and (v) the number of fully diluted shares of Nuance common stock.

36.    With respect to Evercore's Premiums Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

37.    When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38.    Third, the Proxy Statement fails to disclose the timing and nature of the past services Evercore provided to the Company and its affiliates.

39.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

40.    Fourth, the Proxy Statement fails to disclose the timing and nature of all communications regarding post-transaction employment, directorships, and benefits, including who participated in all such communications.

41.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for

stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

43.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Nuance**

44.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Nuance is liable as the issuer of these statements.

46.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

47.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

49.     The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

50.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

51.     Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

<u>**COUNT II**</u>

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

52.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Nuance within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Nuance and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

56.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: May 14, 2021

**RIGRODSKY LAW, P.A.**

By:  */s/ Gina M. Serra*
       Seth D. Rigrodsky
       Timothy J. MacFall
       Gina M. Serra
       Vincent A. Licata
       825 East Gate Boulevard, Suite 300
       Garden City, NY 11530
       Telephone: (516) 683-3516
       Email: sdr@rl-legal.com
       Email: tjm@rl-legal.com
       Email: gms@rl-legal.com
       Email: vl@rl-legal.com

       *Attorneys for Plaintiff*